## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TANIQUA LORICK<br>2814 S. 73rd Street<br>Philadelphia, PA 19153 | :<br>:<br>:   CIVIL ACTION<br>: |
| Plaintiff, | :   No.:<br>: |
| v. | :<br>: |
| BENCHMARK HUMAN SERVICES, LLC<br>700 Second Street, Suite H<br>Swedesboro, NJ 08085 | :<br>:<br>:   **JURY TRIAL DEMANDED**<br>: |
| Defendant. | :<br>: |

### CIVIL ACTION COMPLAINT

Taniqua Lorick (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Benchmark Human Services (*hereinafter* "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*)/the Pregnancy Discrimination Act ("PDA"), the Family and Medical Leave Act ("FMLA"- 29 USC § 2601), and the New Jersey Law Against Discrimination ("NJ LAD").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*)/the Pregnancy Discrimination Act ("PDA"). In order to file her claims under Title VII/PDA, she is required to wait until she receives a case closure and/or right to sue letter from the EEOC. Therefore, Plaintiff intends to amend her complaint to violations of Title VII/PDA once such claims have been administratively exhausted with the EEOC and the EEOC issues a right-to-sue letter.

## JURISDICTION AND VENUE

2.      Plaintiff resides in and is a citizen of Pennsylvania.

3.      Benchmark Human Services, LLC is incorporated under the laws of Indiana with headquarters/principal place of business in the State of Indiana, rendering it a citizen of Indiana.

4.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of Indiana, and the amount in controversy exceeds $75,000.

5.      This action is also being initiated pursuant to federal laws (ADA and FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6.      This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

## PARTIES

8.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.     Plaintiff is an adult individual, with an address set forth in the caption.

10.     Benchmark Human Services, LLC is a human services organization providing quality services to people with disabilities and behavioral health needs throughout Connecticut, Florida, Georgia, Indiana, Maryland, Missouri, Montana, New Jersey, New Mexico, Ohio, and South Dakota.  Plaintiff was hired through and worked out of one of Defendant's New Jersey facilities located at the address as set forth in the above-caption.

11.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is a female individual.

14.     Plaintiff became employed with Defendant in or about July of 2019, following its acquisition of Plaintiff's prior employer (Bellwether Behavioral Health).  Including her predecessor employer, Plaintiff was in total employed by Defendant for almost 3 years, from in or about 2017 until her unlawful termination (discussed *infra*) on or about February 6, 2020.

15.     Upon Defendant's acquisition of Plaintiff's prior employer in or about July of 2019, Plaintiff came under the supervision of Assistant Director, Katrena Briggs (*hereinafter* "Briggs").

16.     Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.  In fact, in or about October of 2019, Plaintiff was promoted to the position of House Manager.

17.     In her position as House Manager for Defendant, Plaintiff oversaw several staff members and the long-term care of residents.

18.     Plaintiff did not personally have any problems or concerns during her employment (pre- and post-supervision by Briggs), until she informed Briggs of her pregnancy (verbally and via doctor's note) in or about November of 2019, at which point Plaintiff began to encounter tremendous hostility from Briggs.

19.     In or about November of 2019, Plaintiff also shared with Briggs that she had been considered high-risk with a prior pregnancy and that she might be considered high-risk for her current pregnancy if she had ongoing complications.

20.     Between in or about November and December of 2019, as a result of the aforesaid possibility of complications with her current pregnancy, Plaintiff discussed her anticipated need for FMLA paperwork with Human Resources personnel, Danielle (last name unknown, *hereinafter* "Danielle) and Briggs.  However, Plaintiff was informed that she was not eligible for FMLA because she had not worked for Defendant for 1 full year following its acquisition of her prior company.

21.     Due to doctor appointments and pregnancy sickness (including hospitalization for blood pressure monitoring and dehydration), Plaintiff only needed to miss approximately 5 or more intermittent days (including partial days) from work, from in or about November of 2019 until her termination.  However, despite informing Defendant of her need for same, Defendant failed to offer Plaintiff FMLA or FMLA paperwork and failed to designate her intermittent time off (for

pregnancy-related care) as FMLA-qualifying intermittent absenteeism, despite the fact that she was legally entitled to FMLA leave for her pregnancy as her prior tenure with her predecessor employer counted towards her FMLA entitlement by law.[2]  Therefore, Defendant failed to follow proper notice, designation, and informational regulations of the FMLA.

22.    After notifying Briggs of her pregnancy, pregnancy-related sickness, and anticipated need for FMLA paperwork and leave, Briggs subjected Plaintiff to increased hostility and animosity, including but not limited to:

  a.  Treating Plaintiff in a rude and demeaning manner;

  b.  Overly criticizing and scrutinizing Plaintiff's work;

  c.  Criticizing Plaintiff's need to take time off (for her pregnancy) and constantly berating Plaintiff with texts while at her doctors' appointments;

  d.  Trying to accuse and discipline Plaintiff for "alleged" wrongdoing to the point where she would have to demonstrate that Briggs was mistaken; and

  e.  Subjecting Plaintiff to hostile comments regarding her pregnancy, including but not limited to, asking Plaintiff point-blank on several occasions for no legitimate reason, "with your pregnancy, can you even do your job?"

---

[2] Under the FMLA, the term "employer" encompasses "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II).  If a defendant is a successor to another employer under this subsection then the plaintiff's entitlement to FMLA leave would have been the same as if his employment by the two employers was "continuous employment by a single employer."  29 C.F.R. § 825.107(c). The "determination of whether or not a 'successor in interest' exists is not determined by the application of any single criterion, but rather the circumstances are to be viewed in their totality." *Id.* at § 825.107(b).  Courts examine these criteria from a plaintiff's viewpoint "at or near the time of the change in employer," and ask "whether an employee who has been retained will understandably view his or her job situation as essentially unaltered." *Vanderhoof v. Life Extension Inst.,* 988 F. Supp. 507, 513 n.2 (D.N.J. 1997).  Courts in this jurisdiction have found continuity when, as is the case here, a health care provider took over a clinic's equipment, inventory, business contracts, medical records, and patients, there was no break in clinic operations, and the clinic continued to provide the same types of services to patients.  *See Lombardo v. Air Prods. & Chems., Inc.*, 2006 U.S. Dist. LEXIS 46077, *12-14 (E.D. Pa. July 7, 2006).

23.     Plaintiff's pregnancy-related sickness (including but not limited to elevated blood pressure) was exacerbated by the hostile work environment that she was subjected to by Briggs, which required additional medical treatment, observation, and doctors' appointments.

24.     On or about February 3, 2020, Plaintiff contacted Briggs and informed her that she needed to arrive later for work because of a pregnancy-related doctor's appointment for an ultrasound and bloodwork (which constituted FMLA-qualifying intermittent leave),[3] and that she would be in after her appointment, to which Briggs replied "ok."

25.     Just a short time later, while Plaintiff was still at her doctor's office, Briggs phoned Plaintiff and informed her that she was being suspended without pay pending an investigation for allegations of client abuse, without providing Plaintiff with any further details.

26.     During her 3-day unpaid suspension, Plaintiff was notably still not provided with any further details regarding the alleged client abuse beyond the bare allegation.  Rather, on or about February 6, 2020, Plaintiff was terminated on the basis that she was somehow "unprofessional" without being provided an opportunity to understand or address any allegation specifics.

27.     Defendant's purported reason for Plaintiff's termination is completely pretextual and false because *inter alia* (1) Plaintiff consistently worked hard for Defendant and performed her job well; (2) Plaintiff did not have a significant discipline history while working for Defendant; (3) Plaintiff did not abuse a client nor had she ever been accused of or disciplined for client abuse

---

[3] It is well established that FMLA leave is permitted for whole days, partial days or medical-related breaks under the FMLA. *See e.g. Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave ***in any size increments*** and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences). *See also Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that *an employer is prohibited from counting medically necessary breaks against an employee* under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co.*, 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

during her tenure with Defendant; (4) upon Plaintiff's information and belief, a police investigation determined the allegation of client abuse against Plaintiff to be false; (5) Plaintiff was subjected to animosity and hostility after apprising Defendant of her pregnancy and need for FMLA leave for pregnancy-related doctors' appointments and sickness; (6) Plaintiff was suspended and ultimately terminated shortly after informing Defendant of her pregnancy and in close proximity to her requests for and/or utilization of FMLA-qualifying intermittent leave.

### COUNT I
### Violations of the New Jersey Law against Discrimination ("NJ LAD")
### ([1] Pregnancy Discrimination and [2] Hostile Work Environment)

28.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29.    In or about November of 2019, Plaintiff informed Defendant's management that she was pregnant.

30.    Shortly after Plaintiff apprised Defendant's management of her pregnancy. Defendant's management subjected Plaintiff to multiple forms of animosity and hostility, through pretextual admonishment and disparate treatment (as discussed *supra*).

31.    On or about February 3, 2020, Plaintiff was suspended and then ultimately terminated on or about February 6, 2020, for pretextual reasons.

32.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment, suspended, and ultimately terminated due to her pregnancy.

33.    These actions as aforesaid constitute unlawful discrimination and retaliation under the NJ LAD.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
#### (Interference & Retaliation)

34.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

36.     Plaintiff requested leave for her own medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A. § 2611(2)(i).

37.     Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment prior to requesting FMLA leave.

38.     Defendant engaged in interstate commerce and employ[ed] fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A. § 2611(4)(A)(i).

39.     Plaintiff is entitled to receive leave pursuant to 29 U.S.C.A. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

40.     Shortly after requesting and/or utilizing FMLA-qualifying leave for her pregnancy, Plaintiff was terminated from her employment with Defendant.

41.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) failing to provide Plaintiff with proper FMLA paperwork and/or notices of rights and obligations under the FMLA, which constitutes a failure to follow proper notice, designation,

and information regulations of the FMLA; (4) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (5) engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and (6) failing to designate Plaintiff's intermittent time off for her pregnancy-related doctors' visits and sickness from in or about November of 2019 until her termination as FMLA-qualifying leave.

42.    These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation; and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  April 9, 2020